okay thank you counsel we appreciate your participation by conference call today I suspect you heard the previous argument so I'll try not to repeat anything but for mr. Rubin I'll give you around three minutes to to get rolling on the case and then at that point if the judges have questions we'll jump in by seniority there's just two of us on this argument judge Akrak will be vouching in later to be the third member of our panel so with that mr. Rubin if you are ready you may proceed if I didn't call the case it's 19-21 12 United States v. Shelton thank you honor Daniel Rubin on behalf of mr. Shelton may it please the court opposing counsel the district court in denying mr. Shelton's motion to suppress made multiple determinations including one whether there was a sufficient basis for reasonable suspicion of a potential burglary to whether there was probable cause and exigent circumstances to enter the curtilage of someone's home without a warrant three whether to impound the vehicle in a private driveway under a community caretaker rationale and for whether the search warrant was supported by probable probable cause and the court made each of these important and decisive determinations all under the wrong legal standard which the court used viewing the weight of the evidence and the light most favorable to the government this was legal error it also was not fair and it was not just we asked this court to deny the district courts denial of mr. Shelton's motion to suppress and remand proceedings consistent with this court's decision I begin with the lack of reasonable suspicion by officer Estrada the district court determined that on the night of January 4th 2018 because it was late at night in a high-crime area a vehicle had its doors open and there were three people who were standing by the car with flashlights that this was enough for officer Estrada to have reasonable suspicion that a vehicle burglary was occurring well it wasn't enough there was no vehicle burglary instead it was mr. Shelton and his friend standing by a car that they had permission from the owner to access that car the district court seemed to disregard in making its reasonable suspicion to determination that one the porch light of the home was on to the lights of the car were on three the car was running and for the car had not been reported stolen the Supreme Court in u.s. vs. Cortez in 1981 confirmed that an investigatory stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity the fact that the officer here subjectively thought he might be observing a vehicle burglary is irrelevant to determining whether there was an object objective basis to detain the participants of the vehicle I next turned to officers officer Estrada's entry into the curtilage of a private residence without a warrant this was not justified because he had one no probable cause and to there were no exigent circumstances in the officer needed both because officer Estrada had no reasonable suspicion to begin with this did not have been ripened into probable cause because the occupants of the car walked away and he did not heed mr. Shelton did not heed his unlawful instruction of come here mr. Shelton had the right to not talk to the officer and he had the right to walk to his own backyard the Tenth Circuit in u.s. vs. Davis in 1996 held that walking away from officers does not furnish the basis of a voluntary stop under story vs. Taylor the Tenth Circuit also under that reasoning officer Estrada's instruction of come here was not lawful so therefore mr. Shelton did not disobey it because you cannot disobey an unlawful order the lack of cause based on mr. Shelton not wanting to talk to an officer and then again walking on his own property to his backyard now the court found that this yes this is a judge Tempkiewicz did did mr. Shelton ever inform officer Estrada that he lived at that residence and that he was a permissive user of the vehicle my understanding from the record is that he did not when did the officer find that out well the officer I don't think did a great investigation the night of in a record reflects that I believe that the officer the incident happened January 4th the officer wrote up a search warrant on January 8th he did not figure out the vehicle owner until the 14th however he should have figured out of course on the night of before he impounded the vehicle in terms of when he figured out I would have I would have expected mr. Shelton to know what the option know that this was his home and his car well I think I think your honor given his Fifth Amendment rights and one to begin with he was allowed to use the car so I think that put him in a pretty vulnerable position of you know wanting to I would have thought the opposite if he had if he had the right to control their vehicle I don't think he could show that that would have dissipated any suspicion the officer might have had that there was a burglary well your honor I think that a lot of a lot of folks particularly you may be in high-crime areas are not are not trusting of law enforcement enforcement officers so if they're aware of their Miranda rights they probably just think it's better at that point just to not say anything but I can I can understand your reasoning as well your honor but you know he did not he did not disclose to answer your question I don't know when it came to officer Strata's attention that he was allowed to be in the home but it wasn't that evening is my understanding of the record I was on probable cause and exigent circumstances in the court the district court found that this was hot pursuit the 10th Circuit in US versus Jackson in 2005 held that an officer needs both probable cause and exigent circumstances and exigent circumstances for hot pursuit hot pursuit occurs when an officer is an immediate or continuous pursuit of a suspect from the scene of a crime in that case u.s. versus Jackson the underlying offense was an objectively confirmed armed bank robbery bank robbery not a subjectively incorrectly subject suspected vehicle burglary does your exigent circumstances argument turn on our conclusion that officer Strata lacked a reasonable suspicion at the time that Shelton took off it begins with that and I think it's that much harder harder to ripen into probable cause but I think it was standalone argument it's fine as well because again my exigent circumstances falls on he walked away from the vehicle and the officer's testimony of the special hearing he confirmed that mr. Shelton walked away you know several times he confirmed that he also was in his own yard at that point and he was that it was a private residence and then nobody knew that at that point mr. Shelton did he understood that he was on his own property and that he was allowed to go to the backyard I guess the officer did not but you know the officer all this time could have also had he suspected the burglary he could have sat in his car in the front and just observed what was going on you know so that could have been what a reasonable officer would have done but he chose not to do that but yes I think the exigent circumstances one is much less likely to succeed succeed based on a lack of reasonable suspicion but to even as a standalone it doesn't ripen because again as I've mentioned mr. Shelton is allowed to walk to his own backyard he's allowed to walk away from an officer and he's allowed to disregard an instruction of come here when it's not a lawful order the district court did however in incorrectly determining that this was hot pursuit cite the very important case of us vs. Mongold Mongold apologies which held that an officer has a heavy burden of demonstrating exigent circumstances that required hot pursuit here the fact that someone walks away and does not listen to an unlawful order does not meet that heavy burden I next didn't all three of them kind of scatter flee at about the same time well the video sure yes they all walked out of the car at the same time but they were all walking and the video shows that the officer's testimony and they're walking again on their property of mr. Shelton so yes they did at the same time I next turn to the day then start running some point they did the officer confirmed in the video as well that they they then started running but really only as a result of the officer escalating the incident and sort of yelling and running after him at that point I next turn to the impoundment of the vehicle under United States versus Sanders the 10th Circuit in 2015 determined that an impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable non-pretextual community caretaking rationale here the stated purpose of the impoundment by the officer himself was for purposes of searching the car it was in a private driveway the car could have been turned off and locked there was no reason for that car to be impounded but for the fact that the officer wanted to take it away and search it immediately officer Estrada did not even bother to contact the owner before impounding the car as I mentioned earlier and as confirmed by officer Estrada the first time that he got in touch with the actual owner of the car was 10 days later on January 14th now finally moving on to the search warrant the search warrant was not supported by probable cause the search warrant was for drug paraphernalia illegal narcotics proof of ownership proof of occupancy and burglary tools regarding the drugs and drug paraphernalia one of the officers that evening found a syringe on one of the other car occupant occupants mr. Delevecchio there was no residue in that syringe and as we pointed out in our opening brief a syringe is legal mr. Delevecchio also did not make any statements about the car after the after that was found he did so that itself because there was no linkage between the syringe in the car that was not enough for probable cause relating to the drugs drug paraphernalia now moving to the the search warrant well again we know this wasn't a car burglary because mr. Shelton had access to the car he was legally allowed by the owner to access it but there was no reference in the affidavit that the car was or was not stolen which would have been helpful although of course we know it was not there was also in the affidavit no indication of whether the owner or had or had not been contacted and we know that the search warrant was written on the owner of the car had not been the officer had not been in touch with the owner at that point the officer contacted the owner after the search warrant affidavit and the search occurred is that correct so the officer on the night of before impounding the vehicle did not even reach out to the owner did not figure out who it was I don't think definitely did not contact now the officer said that between writing up the search warrant he attempted to contact the owner of the car but she was not contacted until until January 14th so he did not actually touch base with her until January 14th so you know I think the big elephant in the room here is again back to the wrong legal standard I think I think I think we would still win this most favorable to the government and the district court had it had it actually used the right legal standard would not have given so much deference to officer Estrada's hunch that he might have observed to be a possible vehicle burglary and concluded the district court would not have been concluded that mr. Estrada had reasonable suspicion to seize the car in the driveway your honor if there's no other questions at this time I'd like to reserve the remaining two minutes please judge Paul doc you have any questions none at this time okay thank you counsel let's hear from the United States Miss Rizzoni good morning your honors counsel may it please the court Jennifer Rizzoni on behalf of the United States your honors this court has a number of grounds on which to affirm the district courts denial of the motion to suppress I'll go through each of the issues briefly here but if I may start with the standard that was addressed originally at the beginning of his defense counsel's argument the government does admit to the standard of review or excuse me the standard that was used by the district court was incorrect in this case it did look at the evidence in the light most favorable to the government but first of all I will say that all of this was argued in footnotes in the briefing it wasn't fully briefed by either party but secondly there are no contested facts in this case the defense the defense has didn't contest it below and really doesn't contest them here in the Court of Appeals additionally what this court has before it is what is a pertinent two-minute time frame video that it can look at to determine the facts and how they comport with what the district court found so the fact that that that the that the facts were not contested really well helps to not have that or helps that the standard does not impact the court's decision here and more importantly the ultimate determination of reasonableness under the Fourth Amendment is going to be a question of law reviewed de novo and so this court has the opportunity to look at those facts and review whether the district courts determination of reasonableness was appropriate in that case that all being said going back to the actual substance of the district court's opinion the government first contends that Shelton wasn't seized in the driveway when officer Estrada first pulled up in order to have been seized this court knows that under HUD R.E.D. seizure only can occur if there is one a show of authority which clearly there was here but two that there's submission to that authority and it's the neither Mr. Shelton nor any of his compatriots submitted to any authority that officer Estrada showed on the evening of January 4th 2018 that all being said though moving on if in fact the court does find that somehow Mr. Shelton was seized officer Estrada had ample reasonable suspicion when he pulled up to the driveway that evening as you know under Terry v. Ohio this court looks the totality of the circumstances and really only needs a objective justification to reach that reasonable suspicion standard here what officer Estrada observed as he drove by the home in question was a number of subjects surrounding a vehicle the doors were open open they were looking in with a flashlight the address in Roswell is a high-crime area as these this factual circumstance officer Estrada immediately turned around his vehicle and he pulled up into the driveway of Shelton's home and in doing so he then observed that the doors were then closed that the headlights and taillights were on the vehicle was running but interestingly the individuals were not visible anymore almost as if they were trying to conceal themselves in the vehicle the individuals then as matter that mr. Shelton was on his own driveway during all this I'm sorry your honor does it matter that he was in his driveway yes property when all this happened your your honor in this particular case the district court found that the driveway was not the cartilage of the house that that it was the fact that he was in the driveway was not a factor in this case in terms of and and that was in terms of the hot pursuit analysis that the district court did but the fact that he was in his driveway at the time that officer Estrada was you know had pulled into the driver back behind the car officer Estrada didn't know who these individuals were or whether it was off mr. Shelton's driveway or whether he was a stranger in what he suspected was obviously a vehicle Berkeley or a vehicle theft so when you found out at the time he arrested him I presumed what's the record show whether mr. Shelton was asked for identification and wouldn't that identification have shown his living address yes I don't know that at the time he was arrested whether or not he answered that question going back to your question I think it was about whether or not the vehicle was his he actually and you can find this at the record on appeal at page 104 he actually said he didn't know who the vehicle the car was so I'm not I'm not entirely sure whether he was asked whether that home was his although I do know that there was some question about that throughout the evening he certainly told the officer directly that he didn't know whose car it was and furthermore he said that anything that was found in the vehicle was not his moving on from that your honor it's the government's contention that with those facts as officer Strada is getting out of his vehicle he absolutely had the reasonable suspicion to believe that there was a crime felony crime taking place and then and again I urge you to go back to the video and watch it takes less than two minutes from start to finish in terms of his apprehension what you'll see is officer shot is getting out of the vehicle and as he is getting out of his vehicle the three individuals inside the vehicle open the doors begin to walk and then mr. Shelton and mr. Delac Delavecchio begin to run and and that is in response to officer Strada saying come here and he says that twice and mr. Delavecchio actually stops as does the female passenger in the vehicle but mr. Shelton continues to run and it's at that point that that headlong flight and evasion of law enforcement that then raises officer Strada's suspicion from reasonable suspicion to probable cause to believe that a crime is taking place if we if we don't agree with you that there was reasonable suspicion at the point that mr. Shelton started running would his flight be enough to create reasonable suspicion at this point your honor I would contend that if you didn't if you do not believe that there was reasonable suspicion leading up to the flight at the point that he takes flight there is then probable cause that a thing that off of off of you know particularly Illinois the word low you know that's a long-standing case that while not necessarily indicative of wrongdoing that flight is certainly suggestive of such and and based on the fact that officer Strada believed all had all of this kind of constellation of factors that were taking place and then he calls out to these individuals and they begin to run away from him fleeing from law enforcement at that at point rose to level of probable cause which then you know funnels into our next our next issue which is whether or not officer Strada was in hot pursuit of Shelton at the time that he decided to run into the backyard of the home and so it's the contention of the United States that at that point there is probable cause to believe that a crime is taking place and that officer Strada was in an immediate and continuous pursuit of Shelton at that point and was justified in going into the backyard of the house to try and apprehend mr. Shelton at that point and then from there your honor you'll see from the video he he briefly is able to grab him and then he and then mr. Shelton again takes off he leaves the backyard he goes to another home and he is found later underneath a trailer at which point he's pulled out and that's at the point where he's asked about the vehicle and whose it is and that kind of a thing. Moving on to the search warrant issue your honor it's our contention obviously that that officer Strada had probable cause when he began to chase Shelton into the backyard all of that information is then submitted in the search warrant and that the the car was properly impounded awaiting the search warrant as this court knows officer Strada actually given the fact that he had probable cause at the time had two choices he could have exercised the automobile exception and actually searched the vehicle right then and there but instead he actually decided to take the steeper route he submitted an affidavit for a search warrant he received that search warrant and eventually searched the car that being said again there is a second search warrant in this case related to the gun because if they were went into the vehicle they saw the gun they didn't want to take it so they submitted a second search warrant to ensure that that would be an appropriate seizure and so it's the United States contention here that the community caretaking doctrine is not even applicable because of the fact that officer Strada had the probable cause to begin with. Your honors unless you all have any questions for me we would simply ask that the Judge Baldock any questions? I have no questions at this time. Counsel before you drop off I was on a panel in our March term of court which seems so many years ago and in that in that case we had the same problem with the legal standard. Yes. Okay well I hope I hope that's being corrected in the District of New Mexico. Yes your honor if I may I realize this is somewhat anecdotal coming from Lilly AUSA but I do understand that there are at least four or five cases that have come up with that same standard and that the district court has been made well aware and is well aware that the standard is incorrect and has corrected itself. Thank you I appreciate that. Mr. Rubin you had some rebuttal time. Thank you your honor. Your honor getting back to your what more but ultimately we believe strongly that the court erred in determining that there was reasonable suspicion and then it makes it that much harder if there wasn't to get to probable cause and even if the court did determine there was probable cause at that point based on flight although again they were walking it was officer Strada who was really responsible for the flight when he escalated the situation and even with probable cause if the court finds out there was you still need exigent circumstances and we rely on our argument that there were no exigent circumstances so so again without the line without the original reasonable suspicion I think it makes it that much harder to get to probable cause and I don't think you get there. Mr. back to your original question. Mr. Rubin if there was reasonable suspicion does that create exigent circumstances once the flight commences? I think it makes it easier to get to exigent circumstances if there was objective reasonable circumstances your honor. Also in terms of your original question of Mr. Shelton you know exercising his Fifth Amendment rights but why didn't he tell the officer well again I would rely on him you know again exercising his Fifth Amendment rights? Well I would also tell you that the officer did a pretty lousy job of investigating that evening. You know you had the videos of him going back to the rear trailer where there was a an occupant there and that man was not even asked whether Mr. Shelton lived in the residence in front. The gentleman was asked who the owner was but it could have been a simple question of well just three of these people that we just arrested lived there and that question wasn't asked so I don't think our legal analysis changes whatsoever and holding to the officer or to the standards of reasonable suspicion and probable cause simply based on Mr. Shelton exercising his Fifth Amendment rights. Thank you. Yeah I have one more question. As I understood the government saying that Mr. Shelton had twice disavowed ownership of the vehicle. How's that factor into a reasonable suspicion analysis? Well the original reasonable suspicion clearly he hadn't talked to Mr. Shelton at that time so we're looking at Mr. Shelton's answers or non-answers after you know ten minutes after the officer would have needed to have reasonable suspicion. Before he was arrested? That he confirmed that the where he said that this is not my sorry I guess yeah yeah did he deny ownership of the vehicle before he was formally arrested? I'd have to look back at the video my understanding is that when they found him he was under the trailer I think the officer probably would have immediately arrested him and then and then Mr. Shelton would have made that statement but I'd have to go back and look at the video your honor. Okay well very good counsel I appreciate your time's expired both you did a very fine job I appreciate that under the circumstances the case will be submitted this is our second and last oral argument for the morning so the call will be terminated after the courtroom deputy says so